IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| KAY MOEHRING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 10-cv-3235 |
| | ) |
| KIFCO, INC., | ) |
| | ) |
| Defendant. | ) |

## OPINION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Defendant Kifco, Inc.'s (Kifco) Motion for Summary Judgment (d/e 25) (Motion). The parties consented, pursuant to 28 U.S.C. § 636(c), to have this matter proceed before this Court. <u>Consent to the Exercise of Jurisdiction by a United States Magistrate Judge</u>, and <u>Order of Reference entered November 16, 2011 (d/e 10)</u>. Plaintiff Kay Moehring alleges that Kifco discharged her because of her age in violation of the Age Discrimination in Employment Act (ADEA), 29 § 621 et seq. <u>Complaint (d/e 1)</u>. Kifco now moves for summary judgment. For the reasons set forth below, the Motion is ALLOWED.

## STATEMENT OF FACTS

Plaintiff Kay Moehring was born on September 20, 1942.  She began working for Kifco in 1989.  Kifco is located in Havana, Illinois.  Kifco manufactures irrigation equipment.  Kifco's primary product is a piece of equipment called a water reel.  A water reel has a long hose wound around a reel.  At the end of the hose is a small cart with a sprinkler.  The hose is unwound and extended across the area to be irrigated.  When the water is turned on, the sprinkler spreads the water to the area to be irrigated, and the machine reels in the hose slowly.  When the hose is completely reeled in, the water automatically shuts off.  <u>Plaintiff's Exhibits to Her Response to Defendant's Motion for summary Judgment (d/e 31) (Plaintiff's Exhibits)</u>, Exhibit 4, <u>Deposition of Virgil Cox (Cox Deposition)</u>, at 17.  Kifco manufactures water reels that are used in open areas such as sports fields, golf courses, and cemeteries.  Kifco also imports the parts from Italy for larger water reels and assembles them in Illinois.  <u>Cox Deposition</u>, at 21-22.  The Italian reels are used in agriculture.  <u>Plaintiff's Exhibits</u>, Exhibit 2, <u>Deposition of Kelly Hagedorn (Hagedorn Deposition)</u>, at 16-18.

In 2006, Kifco President and CEO Ray Francis made Moehring Kifco's office manager.  As the office manager, Moehring entered payroll data on the computer system and distributed payroll checks.  She sent

employees' 401K contributions to the John Hancock Company where the accounts were held.  She entered the hours worked for hourly employees.  She ran payroll reports.  She issued and signed the checks to pay the accounts payable.  She wired funds to Italy to pay invoices.  She printed and kept copies of engineering reports.  She purchased supplies.  She handled the mail.  She took the computer backups to the bank to place in a lockbox.  She typed correspondence.  She prepared a monthly report on employees' accrued vacation time.  She prepared expense reports for traveling sales personnel.  She called past due accounts receivable accounts.  She also talked to customers and dealers.  <u>Plaintiff's Exhibits</u>, Exhibit 1, <u>Deposition of Kay Moehring (Moehring Deposition)</u>, at 79-80, 118-19.

Francis testified that Moehring's work performance was "fantastic." <u>Plaintiff's Exhibits</u>, Exhibit 3, <u>Deposition of Ray Francis (Francis Deposition)</u>, at 55.  Francis testified that Moehring was able to use the company's accounting software, called Made 2 Manage or M2M.  <u>Francis Deposition</u>, at 55-60.  Francis stated that M2M was a very advanced accounting software package.  <u>Francis Deposition</u>, at 52-53.  The Kifco national sales manager Mitchell Maddox testified that Moehring was very effective in assisting the sales department.  She assisted in setting up

training sessions and in dealing with customers and dealers on the phone. Plaintiff's Exhibits, Exhibit 5, Deposition of Mitchell Maddox (Maddox Deposition), at 48-49. Maddox described her as a "go-to for everything" person. Maddox Deposition, at 110.

Moehring worked with two other office staff. At the time of her termination, the two other staff members were Tammy Danner and Ledena Clark. Danner was the accounting assistant. She had experience and training in bookkeeping. She checked prices charged by vendors. She entered payable information on the computer system. She posted journal entries. She posted cash receipts and produced statements to send to dealers. She worked with Kifco's IT provider. Hagedorn Deposition, at 39-40, 41. Clark was the receptionist/billing clerk. She did all of the invoicing of customers. She answered phones and assisted with marketing-related projects. She sent out communications to dealers and sales prospects. Hagedorn Deposition, at 40.

In October 2006, Francis hired Kelly Hagedorn as Kifco's Chief Financial Officer (CFO). Francis testified that in early 2007, Hagedorn commented to Francis that, "we [Kifco] had a lot of old-timers there, a lot of older people . . . ." Francis Deposition, at 63-64.

Moehring reported directly to Hagedorn from the time that Hegedorn joined Kifco as CFO until Moehring's termination in 2009. Hagedorn testified in her deposition that she wanted Moehring to supervise Danner and Clark, but Moehring did not view herself as a manager and did not act as a manager. Moehring Deposition, at 70-72; Hagedorn Deposition, at 30. In addition, Hagedorn testified that she tried to train Moehring two or three times to post journal entries, but could not because Moehring did not understand accounting debits and credits and did not understand the use of general ledger accounts. Hagedorn Deposition, at 41-43. Hagedorn ultimately assigned the task of the posting of journal entries to Danner because of her bookkeeping experience and training. Hagedorn Deposition, at 46.

In 2007, a private equity group called Prairie Capital owned Kifco. Prairie Capital planned to sell the company. Francis objected to the idea to sell. Prairie Capital asked Francis to leave. Prairie Capital paid Francis a bonus and a year's salary as his severance package. Francis Deposition, at 38-39. Francis testified in his deposition that he was happy to leave at the time and under the separation terms. Id. Upon Francis' departure in 2007, Hagedorn became President/CFO of Kifco. Id.

On or about March 20, 2008, a private holding company called Irrigation Holdings bought Kifco from Prairie Capital.  <u>Hagedorn Deposition</u>, at 56.  Two brothers, Chris and John Clevenger, each owned approximately 46 percent of the Irrigation Holdings.  Hagedorn owned approximately 4 percent and three other management personnel at Kifco owned the remaining approximately 4 percent.  <u>Hagedorn Deposition</u>, at 15.  Chris Clevenger (Clevenger) became Kifco's Chief Executive Officer (CEO).  Irrigation Holdings did not own any business other than Kifco.

Hagedorn testified that Kifco experienced a downturn in business with the recession in 2008.  The downturn continued in 2009 and 2010.  <u>Hagedorn Deposition</u>, at 25.  Kifco financial records showed revenues and gross profits dropped substantially each year from 2007 through 2010.  <u>Memorandum of Law in Support of Motion for Summary Judgment (d/e 26)</u>, <u>Confidential Exhibit 2 (d/e 27)</u>, Attachment 4, <u>Income Summary and Balance Sheet Summary</u>.  Kifco management responded by instituting several cost-cutting measures.  In November 2008, Kifco suspended interest payments on its subordinated debt.  Clevenger stopped taking any salary for a year, beginning in December 2008.  <u>Hagedorn Deposition</u>, at 38-39.  In 2009, Hagedorn took a 30 percent pay cut, Kifco instituted 20 percent pay cuts for full time employees, and some full time employees

were put on "a rolling layoff, 50 percent on, 50 percent off." Hagedorn Deposition, at 53. Kifco laid off its temporary seasonal help. Kifco stopped additional employer contributions to employee 401(k) plans. Id. Kifco consolidated its operations into a single building. Previously, its offices had been across the street from the manufacturing facility. Cox Deposition, at 59.

Kifco also eliminated some positions. Kifco had about 30 employees at the beginning of January 2008. Hagedorn Deposition, at 48. On December 1, 2008, Kifco laid off Ronald Craggs, a draftsman, and terminated for cause Clayton Carter, an employee in the shipping department, and eliminated both positions from its workforce. Hagedorn Deposition, at 48-51. In 2009, Kifco laid off laid off Moehring, purchasing manager Randy Bell, and a marketing assistant Brenda Davenport-Fornoff, and eliminated those positions. Kifco also laid off Maddox in 2009.[1]

Hagedorn testified that she and Clevenger decided to reduce the clerical staff from three to two employees as a cost-cutting measure. Hagedorn and Clevenger discussed the three office staff, Moehring, Danner, and Clark, to decide which one to terminate. They decided that

---

[1] The list of separated employees produced in discovery indicated that Maddox was terminated rather than laid off, but Maddox testified that he was laid off. Maddox Deposition, at 53. It is unclear whether Kifco eliminated Maddox's position. See Plaintiff's Notice of Filing Exhibits Under Seal (d/e 37), Attachment 1, List of all Employees Separated from Kifco from January 1, 2007, to November 4, 2011 (Separation List).

Danner and Clark were better able to absorb the tasks done by the three. Hagedorn Deposition, at 39. According to sales manager Maddox, Hagedorn stated that Moehring "was not able to keep up this or with that" and stated that "Ledena was doing a good job." Maddox Deposition, at 109. Moehring also testified that at some unidentified point in time Hagedorn made a statement like, "Well, Ledena has just so much more energy." Maddox Deposition, at 124.

On March 2, 2009, Hagedorn terminated Moehring's employment at Kifco. Hagedorn and Clevenger informed Moehring that her position was being eliminated. Moehring Deposition, at 56-57, 70. She was earning $40,000 per year when she was terminated. Moehring Deposition, at 122. Clark and Danner absorbed Moehring's duties. Clark and Danner each earned approximately $31,000.00 annually. Clark and Danner were both under 40 years of age at the time of Moehring's termination. Plaintiff's Notice of Filing Exhibits Under Seal (d/e 37), Attachment 2, List of all Persons Employed at Kifco from January 1, 2007, to November 4, 2011 (Employee List).

Almost all of the employees affected by layoffs were over 60 years of age. Davenport-Fornoff was 47 years old; the others were all over 60. See

Separation List.² After the layoffs, Kifco had two employees who were over 60 years of age, factory worker Dale Shell, and Virgil Cox in purchasing and receiving. Cox was terminated in July 2010, and Shell retired on January 1, 2011, apparently due to a disability. As of January 1, 2011, Kifco had no employees over the age of 60. Compare Employee List with Separation List.³

## ANALYSIS

Kifco now moves for summary judgment. At summary judgment, Kifco must present evidence that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court must consider the evidence presented in the light most favorable to Moehring. Any doubt as to the existence of a genuine issue for trial must be resolved against Kifco. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once Kifco has met its burden, Moehring must present evidence to show that issues of fact remain with respect to an issue essential to her case, and on which she will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. at 322; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

---

² Another part-time employee, engineer Deane Behrends, retired on September 26, 2008, at the age of 77. See Separation List.
³ By comparing the Employee List and Separation List, all separated employees can be excluded from the list of all employees. The employees remaining at Kifco were all under the age of 60 on January 1, 2011. Employee William Barth reached the age of 60 years on August 25, 2011.

Moehring alleges that Kifco engaged in intentional age discrimination when it laid her off and eliminated her position. The ADEA prohibits age discrimination in employment against people who are 40 years or age or older. 29 U.S.C. § 623. Moehring must prove at trial that Kifco terminated her because of her age. Her age must be the "but-for" cause of her termination. Gross v. FBL Financial Services, Inc., 557 U.S. 167, 177 (2009).

Moehring may proceed at summary judgment under the direct or indirect methods of proof. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the direct method, Moehring must present evidence that directly demonstrates that Kifco laid her off because of her age. See Blise v. Antaramina, 409 F.3d 600, 620 (7th Cir. 2006). The evidence may be circumstantial, but still must point "directly to a discriminatory reason for the employer's action." Id. Under the indirect method, she must present evidence to establish a prima facie case. In the context of a reduction in force, she must present evidence that (1) she was in a protected class; (2) she was meeting her employer's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) her duties were absorbed by employees who were substantially younger than she. See Filar v. Board of Educ. of City of Chicago, 526 F.3d

1054, 1060 (7th Cir. 2008). If Moehring presents a prima facie case, Kifco must put forward a legitimate, nondiscriminatory reason for the challenged employment action. McDonnell Douglas, 411 U.S. at 802. If Kifco presents such a reason, Moehring has the burden of presenting evidence that shows that the proffered reason is a pretext, that is, the stated reason is a lie or phony reason. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981). If Moehring can present such evidence, then the matter will go to trial. See e.g., Hudson v. Chicago Transit Authority, 375 F.3d 552, 561 (7th Cir. 2004).[4]

Moehring proceeds under both the direct and indirect method. She bases her direct method argument on the fact that Kifco laid off older workers and effectively eliminated all employees over 60 years of age. Moehring also relies on opinions expressed by Maddox and Francis in which they criticized management decisions made by Hagedorn and Clevenger. This Court does not second guess management decisions; thus, the criticism from Maddox and Francis proves nothing. See Wolf v.

---

[4] The indirect method of proof at summary judgment is somewhat inconsistent with the general requirement that a party opposing summary judgment must present evidence on each element on which he or she will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. at 322. At trial, Moehring must prove that age was the but-for cause of her termination once Kifco proffers a legitimate non-discriminatory reason for her termination. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 508-11 (1993). Under the indirect method of proof at summary judgment, however, Moehring may overcome summary judgment if she can show pretext even though she has no evidence on the required element of causation. This anomaly may reflect the Supreme Court's recognition of the difficulty of proving intentional discrimination. See e.g., U.S. Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983).

Buss (America) Inc., 77 F.3d 914, 919 (7th Cir. 1996) ("[W]e 'do [ ] not sit as a super-personnel department that reexamines an entity's business decisions.'") (quoting Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986)). The effective elimination of all employees over 60 years of age by January 1, 2011, however, at least shows a correlation between Kifco's employment actions and the age of the affected employees.

Correlation, however, is not causation. Statistical evidence about treatment of employees will only be relevant if it considers similarly situated employees, not any employee in a company,

> "In order to be considered, statistics must look at the same part of the company where the plaintiff worked; include only other employees who were similarly situated with respect to performance, qualifications, and conduct; the plaintiff and the other similarly situation employees must have shared a common supervisor; and treatment of the other employees must have occurred during the same RIF as when the plaintiff was discharged."

Hemsworth v. Quotesmith.Com, Inc., 476 F.3d 487, 491-92 (7th Cir. 2007) (quoting Balderston v. Fairbanks Morse Engine Div. of Coltec Indus., 328 F.3d 309, 320 (7th Cir. 2000)).[5] Moehring must present evidence that directly points to age as the but-for cause; statistical correlations between

---

[5] Older employees also tend to be the highest paid due to their greater years of service with an employer. Moehring, for example, made more money that either Danner or Clark. Virgil Cox was the highest paid hourly employee. He made $23.23 per hour at the time of his termination. The next highest hourly wage was $18.08, earned by William Barth. See Employee List. Thus, the terminations may also correlate with eliminating higher paid employees. Eliminating higher paid employees to save costs may be a legitimate non-discriminatory reason for terminations. See Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1125-26 (7th Cir. 1994).

age and employees in unrelated positions does not directly point to but-for causation.

Moehring also cites Hagedorn's comments as proof of intent. Hagedorn told Francis in January 2007 that Kifco had a lot of old timers. She also commented to Maddox about the abilities of Moehring and Ledena Clark, and that Ledena Clark had a lot of energy. The stray comment in early 2007 is isolated and too far removed to prove anything. See e.g., Merillat v. Metal Spinners, Inc., 470 F.3d 685 at 694 (7th Cir. 2006). The comments about Moehring and Clark only show that Hagedorn preferred Clark as an employee. If anything, the comments tend to support that inference that Hagedorn elected to keep Clark instead of Moehring because she honestly believed Clark was a better employee. The comments do not show age discrimination. Moehring fails to present direct evidence of age discrimination.

Under the indirect method, Moehring presents evidence that supports her prima facie case. She was over 40 years old; she presented evidence that she was meeting her employer's reasonable expectations; she was laid off; and the employees who absorbed her duties, Danner and Clark, were both under 40 years of age.

Kifco argues that Moehring was not meeting Hagedorn's reasonable expectations because she did not supervise Danner and Clark and because she did not post journal entries in accounting journals. The Court disagrees. Francis and Maddox testified that she was an excellent employee. Hagedorn and Clevenger also did not terminate her because she was not doing her job properly. They also did not select Moehring for lay off because she was failing to meet expectations; rather, they evaluated the ability of the three employees to absorb additional duties. This evidence tends to show that Moehring was meeting expectations. Hagedorn's testimony about posting journal entries and supervising Danner and Clark, at best, creates an issue of fact. When read favorably to Moehring, the evidence makes out a prima facie case for purposes of summary judgment.

Kifco proffered its dire financial situation as its legitimate, non-discriminatory reason for Moehring's layoff. Kifco presented evidence that the company's revenues and profits dropped significantly is 2009 and 2010. Kifco also presented evidence that it implemented many cost-cutting measures besides layoffs that affected all employees, even CEO Clevenger and President Hagedorn. Hagedorn testified that she and Clevenger decided to reduce Kifco's clerical staff from three to two as part

of its cost-cutting measures.  The two of them further decided to keep Clark and Danner, rather than Moehring, because they decided that Clark and Danner were better able to absorb all the additional duties.

Moehring must present evidence that the proffered reason is a pretext.  She must show that Hagedorn and Clevenger did not lay her off for the stated reason.  See Hudson v. Chicago Transit Authority, 375 F.3d at 561.  She has failed to present any such evidence.  Moehring cites Maddox and Francis' criticisms of Kifco's management decisions generally, but the issue is not whether Kifco management made poor decisions; the issue is whether the stated reason in this case was a lie or a phony reason.  See Wolf v. Buss (America) Inc., 77 F.3d at 919.  Maddox and Francis' general criticism and skepticism about business decisions does not show that the stated reason was a lie in this case.

Moehring argues that Hagedorn falsely said that Moehring could not post accounting journal entries because Moehring could use the M2M accounting software.  Moehring is comparing apples and oranges.  The fact that Moehring could use a business software package does not mean she understood how to manually post debits and credits in accounting journals.  Thus, Moehring's ability to use the M2M software does not say anything about the veracity of Hagedorn's testimony that Moehring did not

understand debits and credits and did not understand how to post journal entries.

Moehring also cites the fact that so many of the people laid off were older; all were over 40 years old and all but one was over 60. Again, to be relevant, statistical evidence must concern similarly situated employees. Hemsworth v. Quotesmith.Com, Inc., 476 F.3d at 491-92. Moehring presents no evidence that the other laid-off employees were similarly situated to her.

Furthermore, statistical evidence about the treatment of other employees does not address the truthfulness of the stated reason for the particular employment decision at issue, "Even if the statistics did show that the company sometimes discriminates because of age, which at the best they could show . . ., they do not show that the company did so in this instance." Krieg v. Paul Revere Life Ins. Co., 718 F.2d 998, 1002 (11th Cir. 1983). The layoffs of the other Kifco employees in unrelated positions does not call into question the truthfulness of the stated reason that Kifco was having financial difficulties and took many drastic steps to deal with those difficulties, including layoffs. The layoffs of other employees also does not call into question the truthfulness of Clevenger and Hagedorn's stated decision to reduce clerical staff from three employees to two or their

belief that Clark and Danner would be better able to absorb the additional duties.  Moehring's evidence, therefore, fails to show pretext.  Kifco is entitled to summary judgment.

WHEREFORE Defendant Kifco, Inc.'s (Kifco) Motion for Summary Judgment (d/e 25) is ALLOWED.  Judgment is entered in favor of Defendant Kifco, Inc., and against Plaintiff Kay Moehring.  All pending motions are denied as moot.  THIS CASE IS CLOSED.

Enter:     December 12, 2012

                                        *s/ Byron G. Cudmore*
                              UNITED STATES MAGISTRATE JUDGE